IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE CLARK, for her minor child, J.W., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 13 C 4572 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Judge:

Plaintiff Diane Clark ("Ms. Clark") on behalf of her minor son, J.W., seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying J.W.'s claim for Supplemental Security Income ("SSI") under Social Security Act, 42 U.S.C § 1614(a)(3)(C) (2012). On June 26, 2013, Ms. Clark filed a complaint (Dkt. No. 3) requesting summary reversal or remand under Sentence Six of 42 U.S.C. § 405(g).

For the reasons set forth below, Ms. Clark's request for remand is granted and this case is returned to the Social Security Administration's Appeals Council (the "Council") for consideration. Because the Council must review new evidence, this court will neither comment on nor consider the merits of plaintiff's claims seeking summary reversal.

## BACKGROUND

Ms. Clark filed an application for SSI disability benefits on behalf of her minor son, J.W., on February 21, 2010. (Dkt. No. 15, Trans. of Soc. Sec. Admin. R. , the "SSA Record", Ex. 6 at 2.) Ms. Clark alleged that J.W. suffered from a learning disability as a result of exposure to

heroin *in utero*, which had left him disabled as of September 15, 2009. (SSA Record, Ex. 6 at 137; Ex. 8 at 17, 36, 63.) J.W.'s application was denied initially on May 13, 2010 and upon reconsideration on July 30, 2010. (SSA Record, Ex. 5 at 5-6, 11-15.) Ms. Clark then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 17, 2011. (SSA Record, Ex. 3 at 37; Ex. 5 at 17.)

On January 6, 2012, the ALJ denied J.W.'s application for SSI benefits. (SSA Record, Ex. 3 at 32.) Ms. Clark requested review of the ALJ's decision, and the Council denied her request on April 17, 2013. (SSA Record, Ex. 3 at 3.) This made the ALJ's decision the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561 (7th Cir. 2009).

In denying Ms. Clark's request on behalf of J.W., the Council declined to review a revised individual education plan created on June 6, 2012 (the "June IEP") by the Hope Institute Learning Academy. (SSA Record, Ex. 3 at 3.) The Council reasoned the June IEP could not have affected the ALJ's decision, because the June IEP postdated the ALJ's decision. (*Id.*) The ALJ considered several prior iterations of J.W.'s individual education plan in making her determinations concerning J.W.'s condition. (SSA Record, Ex. 3 at 25.)

Under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. (2012), public schools are required to prepare an individual education plan ("IEP") for each disabled student to insure that all individuals have access to a "free appropriate public education". *Id.* §§ 1412(a)(1)(A), (a)(4). An IEP is a written statement describing a child's present levels of academic achievement and functional performance, including how the child's disability affects the child's involvement and progress in the general education curriculum. *Id.* § 1414(d)(1)(A)(i). An IEP must be revised at least once a year to address: lack of progress towards annual goals, results of new evaluations, new information about the child, the child's anticipated needs, or

other matters. *Id.* §§ 1414(d)(4)(A)(i-ii).

J.W.'s IEP was updated on an increasingly regular basis to address new circumstances as they arose. J.W.'s initial IEP was prepared in February 2010 and was subsequently revised on February 18, 2011, October 27, 2011, February 16, 2012, and June 5, 2012. (SSA Record, Ex. 3 at 25; Ex. 7. at 76; Ex. 9 at 6; Dkt. No. 21, the "Pl's Mem.", Ex. 1 at 11.)

The June IEP the Council rejected stated that it was a revision of the February 16, 2012 IEP (the "February IEP"). (Pl's Mem., Ex. 1 at 11.) Where the June IEP added information or made changes to the February IEP, it included the date, "06/05/2012". (Pl's Mem., Ex. 1 at 13-14.)

Significant portions of the June IEP were consequently taken from the February IEP. The February IEP considered developments in J.W.'s condition from October 27, 2011 to February 16, 2012. Because the ALJ made her decision on January 6, 2012, the majority of the February IEP covered J.W.'s condition before the ALJ's decision.

Even though the June IEP related back to the February IEP, and the February IEP concerned the period before the ALJ's decision, the Council rejected the June IEP. The council reasoned the June IEP could not have offered relevant information or affected the ALJ's decision, because it postdated the ALJ's decision. (SSA Record, Ex. 3 at 3.)

Ms. Clark, on behalf of J.W., filed her complaint (Dkt. No. 3) in this court on June 21, 2013, seeking summary reversal of the of the Commissioner's final decision or, in the alternative, remand for consideration of new evidence, specifically the June IEP.

## **LEGAL STANDARD**

Finding an individual disabled is a factual finding best left in most instances to the assigned ALJ acting for the Commissioner. *Campbell v. Shalala,* 988 F.2d 741, 744 (7th Cir.

1993). However, if the claimant submits "new and material evidence" that, in addition to the evidence already considered by the ALJ, makes the ALJ's decision "contrary to the weight of the evidence" in the record, the Appeals Council will review a case. 20 C.F.R. § 404.970(b); *see also Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989). A court on judicial appeal evaluates *de novo* whether the Appeals Council made an error of law in applying this regulation. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir.1997). Absent legal error, the Council's decision whether to review is "discretionary and unreviewable". *Id*.

When the Council rejects evidence because it believes it is non-qualifying, a court may review that limited question. *Farrell v. Astrue,* 692 F.3d 767, 771-72 (7th Cir. 2012). Upon a showing that such evidence is new, material, and that a claimant had "good cause for the failure to incorporate such evidence into the record in a prior proceeding", the review court may remand and order that the additional evidence must be taken before the Commissioner. 42 U.S.C. § 405(g) (sentence six). This returns the case to the Council for consideration. *Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. Ind. 1993).

Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt,* 395 F.3d at 741-42; *Perkins,* 107 F.3d at 1296. New evidence can only be material if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." *Kapusta,* 900 F.2d at 97; *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989). In addition, for new evidence to be "material", there also must be a "reasonable possibility" that the ALJ would have reached a different conclusion had the evidence been considered. *Johnson v. Apfel,* 191 F.3d 770, 776 (7th Cir. 1999).

## ANALYSIS

1. **Disability under the Social Security Act**

    A child is disabled within the meaning of the Social Security Act if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

    Whether a child meets this definition is determined via a multi-step inquiry. *Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 486–87 (7th Cir. 2007) (citing 20 C.F.R. § 416.924(a)). First, if the child is engaged in substantial gainful activity, his claim will be denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, the child's claim will be denied. *Id.* Third, the child's claim will be denied unless his impairment meets, or is medically or functionally equivalent to, one of the listings of impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Giles*, 483 F.3d at 486-87.[1]

    When an ALJ examines whether a child's alleged impairment is functionally equivalent to a listed impairment, the ALJ evaluates the child's ability to function in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 U.S.C. § 416.926a(b), (b)(1). Functional equivalence exists, and a child qualifies for benefits, if the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one. *Id.* § 416.926a(a).

---

[1] The impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 are sorted into broad categories such as "growth impairment", "hematological disorders", "mental disorders", *etc*. *Id*. The criteria and definitions of each kind of disorder are laid out for those under 18. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B. For example, mental disorders are categorized into diagnostic categories such as "organic mental disorders", "schizophrenic", "mood disorders", *etc*. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, § 112.00(A).

## 2. The ALJ's Decision, the June IEP, and the Parties' Arguments

Here, the ALJ concluded that J.W. did not qualify for SSI, because he had marked difficulty in a single domain (acquiring and using information) and less than a marked to no limitation in the other five domains. (SSA Record, Ex. at 27-32.) In declining to review the ALJ's determination, the Council held that the June IEP could not have affected the ALJ's decision, because the June IEP postdated the ALJ's decision and consequently was not relevant to the time period J.W.'s disability application encompassed. (SSA Record, Ex. 3 at 3.)

There is no dispute that the evidence in question is new and that Ms. Clark had good cause for omitting it in earlier proceedings. In fact, in the Commissioner's "Response to Plaintiff's Motion for Summary Judgment" (Dkt. No. 25, the "Comm. Resp."), the Commissioner repeatedly points to the newness of the evidence as the basis for its immateriality in these proceedings. (*Id.* at 10-13.) Therefore, the only question before this court is whether the June IEP is material and thus eligible for remand under Sentence Six of 42 U.S.C. § 405(g).

In Ms. Clark's "Memorandum in Support of Summary Reversal or Remand" ("Pl's Mem."), she offers three reasons that the June IEP is material: (1) it did in fact relate back to the period under consideration by the ALJ, (*id.* at 13); (2) it supports finding that J.W. has a marked limitation in interacting and relating with others, (*id.* at 14); and (3) it supports finding that J.W. has a marked limitation in attending and completing tasks, (*id.*). The court finds Ms. Clark's arguments persuasive.

## 3. The June IEP Relates Back to the Relevant Time Period

Although evidence is generally not material if it postdates an ALJ's decision, there is an exception for evidence that nonetheless "speaks to the [claimant's] condition at or before the time of the administrative hearing." *Girondi, ex rel. A.G. v. Astrue*, No. 09-3623, 2011 WL

1789810, at *7 n.1 (N.D. Ill. May 6, 2011) (Cole, M.J.). An individual's level of mental functioning is generally considered a lifelong condition, and consequently evidence which demonstrates mental ability, even if acquired after an ALJ's decision, is considered material. *Id.* (citing *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986)). For example, in *Girondi*, though the IQ test at issue was not scored and reported until after the ALJ hearing, Magistrate Judge Cole found it material, because IQ scores generally remain the same throughout life. *Id.* at *7-8. The IQ test therefore related back to the period in question. *Id.*

While Ms. Clark mistakenly argued that the June IEP was a revision of the October 27, 2011 IEP, she maintains that the June IEP is new and material to the period in question—*i.e.,* any time before January 6, 2012. (Dkt. No. 26, Pl's Reply at 5-6, n.2.) Ms. Clark argues there is a reasonable possibility that the ALJ would have changed her decision if she had considered the June IEP. (*Id*.)

The Commissioner responds that there is no indication that the June 6, 2012 IEP revision reflected J.W.'s condition during the relevant period. (Comm. Resp. at 10.) Moreover, the Commissioner argues that while J.W. may have had cycles of improvement and deterioration, there is no evidence of such changes between October 28, 2011, and January 6, 2012. (*Id.*) The Commissioner adds, "Any deterioration could more likely have occurred in the five months between the ALJ's decision [on January 6, 2012] and the June 6, 2012, IEP revision." (*Id.*)

This court is persuaded that the June IEP does relate to the period in question. The June IEP was a revision of the IEP created on February 17, 2012. (Pl's Mem., Ex. 1 at 11.) The February IEP reflected changes in J.W.'s condition that occurred between October 27, 2011 and February 17, 2012. *Supra* at 3. To indicate what material was added and what information came from the February IEP, the June IEP included dates where changes were made or

information was added. (Pl's Mem., Ex. 1 at 7, 13-14.) However, the June IEP contained important observations about J.W.'s behavior, mental state, and cognitive ability that were not dated "06/05/2012". (Pl's Mem., Ex. 1 at 13-14; *infra* at 9-10.) These observations can be reasonably inferred to have originated from the February IEP, which examined J.W.'s condition from October 27, 2011 to February 17, 2012. A significant portion of this time occurred before the January 6, 2012, ALJ decision.

Because the June IEP relates back to the period examined by the ALJ and provides information about J.W.'s condition and mental ability, the Council's decision to reject the June IEP, simply because it post-dated the ALJ's decision, was incorrect. *Girondi*, 2011 WL 1789810, at *7 n.1. The court is unpersuaded by the Commissioner's argument that the June 6, 2012 IEP is immaterial because any "deteriorations in J.W.'s condition" likely occurred after the ALJ's decision.

**4. The June IEP is Material**

Although new evidence may relate back to the time period under review by the ALJ, the evidence must also cast doubt on the ALJ's decision to be considered material and thus eligible for remand under Sentence Six 42 U.S.C. § 405(g). *See Johnson v. Apfel,* 191 F.3d 770, 776 (7th Cir. 1999) (holding new evidence is "material" only if there is a "reasonable possibility" an ALJ would have reached a different conclusion ). A plaintiff does not have to show the new evidence makes it "more likely than not" that the ALJ's outcome would have been different. *Willis v. Astrue,* 116 F.Supp.2d 971, 976 (N.D. Ill. 2000) (Coar, J.).

    *a. J.W.'s Interactions & Relations with Others*

In finding that J.W. had less than a marked limitation in interacting and relating with others, the ALJ pointed out that while he had a tendency of teasing his peers in unstructured

settings, he got along well with others, adults, teachers and enjoyed being a helper. (SSA Record, Ex. 3 at 29.) The ALJ also suggested that "he had friends his own age and could make new friends" and "generally got along with adults". (*Id.*)

Ms. Clark argues that there were specific changes in the June IEP which were made in order to "'[a]ddress changes due to aggressive behavior, [and to] add social emotional goal [sic]'". (Pl's Mem. at 14.) Ms. Clark, on J.W.'s behalf, asserts that had the Council examined the June IEP, it would have found a reasonable possibility that the ALJ would have changed her decision. (Pl's Mem. at 13.) The Commissioner again argues that the June IEP does not reference the relevant time and that therefore is not material. (Comm. Resp. at 12.)

The quote Ms. Clark cites to establish her above argument comes from a section of the June IEP dated 06/05/2012, indicating that it was new information and not original to the February IEP. However, a significant amount of information from the February IEP in the June IEP revision casts doubt on the ALJ's finding that J.W. had less than a marked limitation in interacting and relating with others.

> In a section not dated "06/05/2012", the IEP states:
>
> [J.W.'s] behavior significantly impacts his learning and the learning of other students. [He] has been suspended three times this year for physical aggression and fighting. [J.W.] also exhibits defiant behavior that seems to be attention-seeking and/or power-seeking in nature. … He can be very argumentative and confrontational whenever one makes absolute statements…. (J.W.) will have a problem with those statements just to be disagreeable. This defense seems to be his way of having some level of control of the conversation. He also has a history of poor interpersonal relationships with peers and adults…. [J.W.] can over-react to situations…. He may not show remorse if he feels he was justified in his aggressive response. He has at times become physically aggressive with other students and been suspended for it.

(Pl's Mem., Ex. 1 at 13-14.)

This court consequently believes that the June 2012 IEP revision is material, should be

added to the record, and examined by the Council to determine whether to review or remand the case to an ALJ for rehearing.

*b. J.W.'s Attending and Completing Tasks*

In finding that J.W. had less than a marked limitation in attending and completing tasks, the ALJ acknowledged that at least one of J.W's teachers reported the claimant had significant problems focusing and staying on task. (SSA Record, Ex. 3 at 28.) However, the ALJ also cited the February 25, 2011, IEP from the Hope Institute Learning Academy, which stated that he could follow classrooms directions with minimal repetition and had responded well to incentive programs to help him complete his work, before concluding that J.W. had less than a marked limitation. (*Id.*)

Ms. Clark argues that the June IEP contradicts the ALJ's assertion that J.W. had begun improving "academically, socially, and behaviorally" (SSA Record, Ex. 3 at 25), and supports a finding that J.W. had marked limitations in attending and completing tasks. (Pl's Mem. at 14.) The Commissioner again argues that the June IEP does not reference the relevant time and therefore is not material. (Comm. Resp. at 12.) This court finds that the June IEP contains evidence that is material to the determination of whether J.W. had a marked limitation in attending and completing tasks as of January 6, 2012.

The June IEP, again in a section not dated 06/05/2012, and thus from the February IEP, states:

> [J.W.] rarely completes homework. He quickly loses/ forgets materials (such as folders and planners), even after receiving new materials from teachers. He benefits from accountability, positive reinforcements, and praise when something is completed. … He struggles with beginning and persevering through academic work both in school and at home. [J.W.] struggles with completing tasks and organizing work. J.W. enjoys group work but he is easily distracted in this setting. … He needs supports [sic] mentally refocusing when transitioning between activities, especially in the general education classroom.

–10–

(Pl's Mem., Ex. 1 at 13-14.)

To be clear, this court is not determining whether the above passages require the Council to review the ALJ's decision. However, the court believes that the June 2012 IEP revision is material, should be added to the record, and examined by the Council in determining whether to review or remand the case to an ALJ for rehearing.

**5. Ms. Clark's Request to Reverse the ALJ's Determination**

Even though Ms. Clark has sought reversal of the ALJ's determination (Pl's Mem. at 7-12), this court will not reverse or comment further on the merits of the ALJ's determination. As held above, under Sentence Six of 42 U.S.C. § 405(g), the court remands this case to the Council to consider new evidence. When remanding under Sentence Six, a district court does not affirm, modify, or reverse the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Instead, the reviewing court merely remands the case, because new evidence, not available at the time of the administrative proceeding, might change that proceedings outcome. *Id.*; *see also Farrell,* 692 F.3d at 773 (remanding case to Social Security Administration in light of new evidence without deciding whether ALJ error occurred).

## CONCLUSION

For the reasons set above, Ms. Clark's request for remand under Sentence Six of 42 U.S.C. § 405(g) (Dkt. No. 3.) is granted. There is a "reasonable possibility" that the ALJ may have reversed her decision had she considered the June IEP, and this case is consequently remanded to the Social Security Administration's Appeals Council for consideration of the June 6, 2012, IEP revision.

ENTER:

*/s/ James F. Holderman*
_____
JAMES F. HOLDERMAN
United States District Judge

Date: June 10, 2014